Todd A. Seaver (SBN 271067)
**BERMAN DEVALERIO**
One California Street, Suite 900
San Francisco, CA 94111
Telephone: (415) 433-3200
Facsimile: (415) 433-6282
Email: tseaver@bermandevalerio.com

*Counsel for Plaintiffs and the Proposed Class*

[Additional Counsel on Signature Page]

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES LEBINSKI, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>INTUIT, INC.,<br><br>Defendant | Civil Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**CLASS ACTION**<br><br>**DEMAND FOR JURY TRIAL** |

CLASS ACTION COMPLAINT

Plaintiff, James Lebinski, ("Plaintiff") by and through his attorneys, brings this action on behalf of himself, and on behalf of a proposed class against defendant Intuit, Inc. ("Intuit"), for negligence, negligent performance of an undertaking, aiding and abetting fraud, and aiding and abetting a conversion. Plaintiff alleges the following upon information and belief, except for those allegations that specifically pertain to Plaintiff, which are based on Plaintiff's personal knowledge.

**BACKGROUND OF THE ACTION**

1. Defendant Intuit is a provider of financial software solutions to consumers and businesses. This action involves one of Intuit's flagship product lines; TurboTax. Intuit's TurboTax products and services enable individuals and businesses to prepare and file their own federal and state personal income tax returns electronically ("e-file"). TurboTax customers can also e-file their federal and state tax returns through Intuit's electronic filing center.

2. This case follows a series of massive data breaches in the U.S., including at major retailers, and more recently, health insurance companies. Through those data breaches, confidential information maintained by the entities was stolen and used for improper purposes. One of those improper purposes has been the fraudulent e-filing of tax returns in the names of individuals and entities whose confidential information was stolen.

3. TurboTax is alleged to have been particularly susceptible to the fraudulent conduct. Turbo Tax lacked the security controls needed to prevent fraudsters from opening new accounts in the names of those persons and entities whose information was stolen, e-filing fraudulent tax returns in those persons' names, and diverting tax refunds directly to the fraudsters. Indeed, in connection with the 2014 tax year, someone opened a new account at TurboTax in Plaintiff's name using Plaintiff's name and Social Security number, fraudulently e-filed tax returns using that information, and then directed the tax refund to the fraudster's account.

4. This action seeks to recover damages for Intuit's failure to take reasonable steps to prevent fraudulent tax returns from being e-filed in the name of Plaintiff and the members of the proposed Class, and for aiding and abetting the fraudsters' conduct.

## JURISDICTION

5. This Court has subject matter jurisdiction of this action under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2). At least one Plaintiff and Defendant are citizens of different states. The amount in controversy exceeds $5 million, and the number of putative class members exceeds 100 members. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

6. This Court has personal jurisdiction over the Defendant because the Defendant is headquartered in the District at 2700 Coast Avenue, Mountain View, California, and regularly conducts a substantial amount of its business in this District.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) and (b) because all or a substantial portion of the acts giving rise to the violations alleged herein occurred in this District.

## PARTIES

8. Plaintiff James Lebinski is a citizen and resident of Monroe, Connecticut. For at least ten years, Mr. Lebinski has filed joint federal and state tax returns with his wife using Turbo Tax.

9. Defendant, Intuit, is a Delaware corporation headquartered in Mountain View, California. Intuit's common stock is quoted on the NASDAQ Global Select Market under the symbol "INTU."

## FACTUAL ALLEGATIONS

10. Intuit is a provider of financial software solutions to consumers and businesses. Intuit organizes its business into three reportable segments: Small Business, Consumer and Professional Tax. Intuit's Consumer segment includes two product lines: Consumer Tax and Consumer Ecosystem. TurboTax products and services fall under Intuit's Consumer Tax business. Intuit provides a variety of TurboTax products and services, on both a free and paid basis, that allow consumers to file their federal and state tax returns electronically, or e-file.

11. The TurboTax product line contains a number of products directed at consumers, including the TurboTax basic, for simple returns, TurboTax Deluxe for taxpayers who itemize

deductions, TurboTax Premiere for taxpayers who own investment property, and TurboTax Home and Business for small business owners. Intuit also offered TurboTax Free Edition online for the simplest returns, TurboTax for the Tablet, and SnapTax, described as an application that allows users with simple federal and state returns to prepare and e-file them through their smartphones. TurboTax customers can also e-file their federal and state tax returns through Intuit's electronic filing center.

12. The e-filing of tax returns has risen dramatically over the past sixteen years. Starting as a pilot program in 1986, it expanded nationwide in 1990, with 4.2 million returns e-filed. In 1998, Congress passed IRS RRA 98 containing a provision setting a goal of an 80% e-file rate for "all federal tax and information returns." By 2005, e-filed returns crossed the 50% threshold, with 68.4 million returns filed. By 2011, e-filed returns crossed the 100 million threshold in one filing season. In 2012, e-filing hit the 80% goal set by Congress in 1998.

13. TurboTax is believed to be the largest online tax return service by far. According to a February 6, 2015 article posted on *The Wall Street Journal* website, last year TurboTax products were used to prepare 29 million tax returns, while H&R Block and TaxAct, a unit of Blucora, each assisted with only about 7 million self-prepared returns.

14. Intuit considers its TurboTax products and services as one of its three flagship products. According to Intuit's Annual Report on Form 10-K filed with the SEC for the fiscal year ending July 31, 2014, the Consumer segment generated $1.831 billion in revenue for fiscal 2014, accounting for 41% of Intuit's total revenue.

**E-Filing and the Explosion of Tax Return Fraud**

15. The dramatic increase in e-filing has led to a corresponding dramatic increase in tax return fraud. According to a January 13, 2015 article on *The Wall Street Journal* website by Jay Starkman, CPA, tax identity theft "exploded to more than 1.1 million cases in 2011 from 51,700 in 2008." Mr. Starkman attributed the rise in fraudulent returns directly to e-filing. According to Mr. Starkman, "[w]ith e-filing, evidence of fraud is difficult to find. There are no signed tax forms, envelopes or fingerprints, and e-filing promotes quick refunds."

> It's easy for criminals to e-file using a real name and Social Security number combined with a phony Form W-2 (wages) or fabricated Schedule C (business

income). The refund can be posted to an anonymous "Green Dot" prepaid Visa or MasterCard purchased at a drugstore. Such cards have a routing and account number suitable for direct deposit. The IRS may even correct a fraudulent return to refund the estimated taxes that the real taxpayer already remitted, as happened to one of my victimized clients.

\* \* \*

The IRS will replace a lost or stolen refund check. However, a stolen refund using an altered or erroneous routing number on a tax return will generally not be refunded until the bank returns funds to the IRS. ***Otherwise, the taxpayer's sole recourse is a lawsuit against the return preparer.***[1]

\* \* \*

Unlike ordinary creditors paid electronically, the IRS is in the business of sending refunds but it doesn't compare names on bank records against its own files. So, with just the routing information from a personal check, a skilled criminal can use the electronic tax-payment system to transfer funds from a victims bank account as an estimated tax-payment to another stolen name and Social Security number, then file a refund claim transferring the stolen funds to his own account.

**Recent High-Profile Data Breaches Exacerbate Tax Return Fraud**

16. The years 2014 and 2015, to date, have been marked by high-profile data breaches at major retailers such as Home Depot, Target, and Kmart, whereby customer names, emails and credit card numbers were compromised, and more recently, at health insurers such as Community Health Systems, Anthem, Inc., and Premera Blue Cross. Health insurers are a treasure trove of confidential information as they typically collect and maintain information such as subscriber and customer names, dates of birth, email addresses, physical addresses, telephone numbers, Social Security numbers, member identification numbers, bank account information, and medical claims information. The Anthem data breach was particularly serious as it potentially impacted almost *90 million people*.

17. By hacking into the confidential personal information maintained by these databases, fraudsters have been able to use that information for illicit purposes, notably the e-filing of fraudulent tax returns, primarily through TurboTax, and diverting the ill-gotten refunds from the IRS to themselves.

---

[1] Bold and italics added throughout unless otherwise noted.

CLASS ACTION COMPLAINT                                                                                                     4

## How the Fraud Occurs

18. According to a February 17, 2015 article written by Brian Krebs, who publishes the widely-read blog, *Krebs on Security*, the e-filing fraud perpetrated through TurboTax occurred in two different ways. In the article, Krebs talked with Intuit chief information security officer Indu Kodukula, who said that traditionally most of the bogus refund requests were the result of what Intuit calls "stolen identity refund fraud" or SIRF. "In SIRF scams, the thieves gather pieces of data about taxpayers from outside means – through phishing attacks or identity theft services in the underground, for example – then create accounts at TurboTax in the victims' names and file fraudulent tax refund claims with the IRS."

19. A second type of attack is known as an account takeover, whereby the fraudster gathers information about the victim to compromise an existing Turbotax account. Kodukula stated Intuit was aware of these practices, after seeing 'wave after wave' of attempted logins.

20. According to Kodukula, currently about 60% of the returns flagged by Intuit as potentially fraudulent appear to come from SIRF, while the other 40% are the result of account takeovers.

21. In both styles of attack Inuit's systems failed to prevent the e-filing of fraudulent tax returns.

## Intuit Has Been the Subject of Substantial Criticism for Failing to Guard Against E-Filing Fraud

22. On February 5, 2015, Intuit announced that it temporarily suspended state e-filing amid reports from states of criminal attempts to obtain refunds through the TurboTax system.

23. In a February 6, 2015 article on *The Wall Street Journal* website, Charlie Roberts, a spokesman for the Utah State Tax Commission discussed the e-filing fraud in Utah noting that the likely fraudulent tax returns were all filed through TurboTax. Roberts noted that the recent incidents were:

> "More than normal identity theft where someone steals a Social Security number and makes up information." A key difference: "Fraudsters obtained information that's generally only found on income tax returns." In some cases, the fraudulent

2014 returns closely resemble 2013 returns, with only minor alterations -- implying that scammers had access to the taxpayers' 2013 returns.

24. According to the article, Utah, Alabama, Minnesota and Georgia issued press releases expressing concerns that fraudulent returns were being e-filed this year. According to a press release from Utah officials, 19 states have identified potential fraud issues. Minnesota announced that it stopped accepting tax returns submitted by individuals using TurboTax. Alabama tax officials announced that they had identified up to 16,000 returns suspected of being fraudulent.

25. The article went on to note that "[n]o other providers have yet been identified as a source of fraudulent state e-filed returns." It further quoted H&R Block spokesman Gene King who said, "H&R Block has no indication of similar problems with its state tax filings . . . H&R Block continues to file state and federal returns as usual." A TaxAct spokesman said that TaxAct was not seeing similar fraud issues and that customers could file state and federal returns as usual.

26. The H&R Block spokesman identified a key difference between his company's security measures and TurboTax, noting that his company's anti-fraud controls include requiring an e-filed return to have been accepted by the Federal Government prior to electronically transmitting a state return. TurboTax, by contrast, makes it possible to e-file a state return without e-filing a federal return.

27. According to the February 17, 2015 *Krebs on Security* article, TurboTax's failure to implement proper security measures is partly to blame for the proliferation of the fraud:

> Security experts (including this author) have long called on TurboTax to implement two-step authentication for customers to help address the account takeover problem of password reuse by consumers. Earlier this month, Intuit announced it would be implementing this very feature, although the company's choice of approaches may fall short of what many security experts think of when they talk about real two-step or two-factor authentication.

**Whistleblowers Claim That Intuit Knowingly
Processed False Federal and State Tax Returns**

28. On February 22, 2015, *Krebs on Security* reported that two former security experts at Intuit have alleged that the company has made millions of dollars ***knowingly*** processing state and federal tax refunds filed by cybercriminals. According to the article, those two former employees, "who each held crucial security positions helping the company identify and fight tax fraud" described a company "that has intentionally dialed back efforts to crack down on SIRF so as not to lose market share when fraudsters began shifting their business to Intuit's competitors."

29. In connection with the article, Krebs interviewed Robert Lee, a security business partner at Intuit's consumer tax group until his departure in July 2014, who told Krebs that he and his team at Intuit developed sophisticated fraud models to help Intuit quickly identify and close accounts that were being used by crooks to commit massive amounts of SIRF.

> But Lee said he was mystified when Intuit repeatedly refused to adopt some basic policies that would make it more costly and complicated for fraudsters to abuse the company's service for tax refund fraud, ***such as blocking the re-use of the same Social Security number across a certain number of TurboTax accounts***, or preventing the same account from filing more than a small number of returns.

30. The article quoted Lee, who said:

> We found literally millions of accounts that were 100 percent used only for fraud. But management explicitly forbade us from either flagging the accounts as fraudulent, or turning off those accounts.

31. Lee further noted that that crooks perpetrating SIRF typically force the IRS – and by extension, U.S. taxpayers – to cover the fee for their bogus filings by taking advantage of what's called "refund transfer," whereby the TurboTax fee is paid by deducting the fee from the refund:

> The reason fraudsters love this system is because they don't even have to use stolen credit cards to do it. What's really going on here is that the fraud business is actually profitable for Intuit.

32. The February 22, 2015 *Krebs on Security* article further reported allegations made by Shane MacDougall, formerly a principal security engineer at Intuit who resigned in February 2015, and filed an official whistleblower complaint with the SEC "alleging that the company

1    routinely placed profits ahead of ethics." The article purports to quote from MacDougall's SEC
2    filing that "Complainant repeatedly offered solutions to help stop the fraud, but was ignored."
3        33.    According to Krebs, Lee and MacDougal both said that Intuit's official approach
4    to fighting fraud is guided by a policy of zero tolerance for "false positives" – the problem of
5    incorrectly flagging a legitimate customer refund request as suspicious thereby delaying a
6    customer refund and generating an inquiry by the IRS.  Krebs claims this is supported by audio
7    recordings of conference calls between Intuit's senior executives that were shared with *Krebs on*
8    *Security*.
9        34.    Krebs further states that both Lee and MacDougall "wanted to go public with
10   their concerns because TurboTax and the rest of the industry have for so long put off
11   implementing stronger account security measures."

> MacDougall said he filed the whistleblower complaint with the SEC because he witnessed a pattern of activity within Intuit's management that suggested the firm was not interested in stopping fraud if it meant throttling profits when none of its competitors were doing the same.

15       35.    According to MacDougall, about a year ago Intuit's security team was asked to
16   "pitch their projects for the year."  He created and proposed a project that created a "fraud
17   honeypot" designed to frustrate and outsmart fraudsters.  MacDougall claims he was stunned
18   when his boss emphatically rejected his idea.  According to MacDougall, his boss said "You can
19   use this on any product except TurboTax."  "I asked why we wouldn't want to use this on our
20   flagship product, and her answer was that this was an industry problem and not just a TurboTax
21   problem."

**Facts Pertaining to Plaintiff**

23       36.    Plaintiff Lebinski was the victim of SIRF, not a takeover of a pre-existing
24   TurboTax account.
25       37.    Plaintiff Lebinski had previously used TurboTax to file his federal and state tax
26   returns.  Mr. Lebinski and his wife have filed joint tax returns since they were married in 1996.
27       38.     In early April 2015, Mr. Lebinski attempted to use Turbo Tax to begin the
28   process of filing his 2014 federal and state returns.  Mr. Lebinski paid the Turbo Tax filing fee,

and attempted to file his returns.  On April 14, 2015, Mr. Lebinski received an "error message" from Turbo Tax, indicating a problem with the filing.  Mr. Lebinski called Turbo Tax customer service that night, stayed on the line for over two hours, but never got through to anyone.

39. On April 15, 2015, Plaintiff Lebinski called Turbo Tax again.  Again, he had to endure a wait of over two hours before connecting with Turbo Tax representative Amanda Carter.  Turbo Tax's Ms. Carter confirmed the following information:

   a. Plaintiff Lebinski was a victim of identity theft;

   b. Mr. Lebinski was not the victim of an account take over.  Rather, a new Turbo Tax account was opened in Mr. Lebinski's name, using his Social Security number, and his address with a slight mistake in the spelling of the street name;

   c. Mr. Lebinski's private information was coupled with the information of another man, and both were used to file a return under a statute used by same sex domestic partners;

   d. A new email address was added to this account;

   e. The new account did not include Plaintiff Lebinski's wife or children;

   f. The thieves obtained refunds of between $1,000 and $5,000, with those amounts placed onto untraceable disposable/reloadable credit cards;

   g. As a result, Plaintiff Lebinski will have to go through a long, arduous process to obtain the refunds owed him, a process that will take approximately 180 days.  It is unclear if Plaintiff Lebinski will be able to file his taxes on line again.

40. As a result of the identity theft, Plaintiff Lebinski has paid for his own, outside personal credit protection service, signed up for Credit Karma credit score monitoring, reported the identity theft to Turbo Tax and credit monitoring companies, reported the fraud to his employer, filed fraud alerts, filed a police report, started the process of re-filing his tax returns, and changed all relevant passwords, among other protective actions.

41. Turbo Tax charged Plaintiff Lebiniski $111.08 even though he could not file his federal or state return.

42. To date, and as result of this identity theft, Plaintiff Lebinski has spent almost 100 hours dealing with the ramifications of this fraud.

**CLASS ACTION ALLEGATIONS**

43. Plaintiff brings all claims as class claims under Federal Rule of Civil Procedure 23. The requirements of Fed. R. Civ. P. 23(a), 23(b)(1), 23(b)(2) and 23(b)(3) are met with respect to the Class defined below:

> All persons and businesses in the United States who had fraudulent tax returns filed in their name through TurboTax.

44. Excluded from the Class are Defendant; officers, directors, and employees of Defendant; any entity in which Defendant has a controlling interest, is a parent or subsidiary, or which is controlled by Defendant; and the affiliates, legal representatives, attorneys, heirs, predecessors, successors, and assigns of Defendant. Also excluded are the judges and court personnel in this case and any members of their immediate families.

45. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of the claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

46. All members of the proposed Class are readily ascertainable in that Intuit has access to addresses and other contact information for all members of the Class, which can be used for providing notice to Class members.

47. *Numerosity.* The Class is so numerous that joinder of all members is impracticable. The Class includes thousands of individuals and businesses had whose fraudulent tax returns filed in their names using TurboTax. While the exact number of class members is unknown to Plaintiff at this time, it includes at least 16,000 fraudulent returns identified by Alabama alone. It was reported that last year TurboTax products were used to prepare 29 million returns.

48. *Commonality.* There are numerous questions of law and fact common to Plaintiff and the Class, including the following:

   a) whether Intuit engaged in the wrongful conduct alleged in this Complaint;
   b) whether Intuit's conduct was unlawful;

        c)        whether Intuit failed to take reasonable steps to prevent the fraudulent opening of accounts for Class members, and the fraudulent filing of tax returns in the Class members' names;

        d)        whether Intuit failed to, or unreasonably delayed in notifying affected Class Members that fraudulent tax returns were filed under those Class members' names;

        e)        whether Intuit had actual knowledge that fraudsters were filing tax returns in the names of the Class members;

        f)        whether Plaintiff and members of the Class suffered injury, including ascertainable losses, as a result of Intuit's conduct (or failure to act);

        g)        whether Plaintiff and other Class members are entitled to recover damages; and

        h)        whether Plaintiff and Class members are entitled to equitable relief, including injunctive relief, restitution, disgorgement, and/or other equitable relief.

49. *Typicality*. Plaintiff's claims are typical of the claims of the Class in that the representative Plaintiff, like all Class members, had fraudulent tax returns filed under his name through TurboTax. Plaintiff and all Class members were injured through the uniform misconduct of Intuit described in this Complaint and assert the same claims for relief.

50. Plaintiff and his counsel will fairly and adequately protect the interests of the Class. Plaintiff has retained counsel experienced in class action and complex litigation, including in security breach litigation. Plaintiff has no interests that are antagonistic to, or in conflict with, the interests of the Class.

51. The questions of law and fact common to Class members predominate over any questions which may affect only individual members.

52. *Superiority*. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Moreover, absent a class action,

1 most Class members would find the cost of litigating their claims prohibitively high and would
2 therefore have no effective remedy, so that in the absence of class treatment, Defendant's
3 violations of law inflicting substantial damages in the aggregate would go un-remedied without
4 certification of the Class.  Plaintiff and other Class members have been harmed by Intuit's
5 wrongful conduct and/or action.  Litigating this action as a class action will reduce the possibility
6 of repetitious litigation relating to Intuit's conduct and/or inaction.  Plaintiff knows of no
7 difficulties that would be encountered in this litigation that would preclude its maintenance as a
8 class action.

9   53.  Class certification, therefore, is appropriate under Fed. R. Civ. P. 23(b)(3),
10 because the above common questions of law or fact predominate over any questions affecting
11 individual members of the Class, and a class action is superior to other available methods for the
12 fair and efficient adjudication of this controversy.

13   54.  Class certification is appropriate under Fed. R. Civ. P. 23(b)(1)(A), in that the
14 prosecution of separate actions by the individual Class members would create a risk of
15 inconsistent or varying adjudications with respect to individual Class members, which would
16 establish incompatible standards of conduct for Intuit.  In contrast, the conduct of this action as a
17 class action conserves judicial resources and the parties' resources, and protects the rights of
18 each Class member.

### COUNTS

### COUNT I – NEGLIGENCE

21   55.  Plaintiff incorporates the foregoing allegations as if fully set forth herein.
22   56.  In its capacity as a tax preparer, *i.e.*, an entity that collects and assembles highly
23 confidential, sensitive information and transmits that information to the IRS and state tax
24 agencies, Defendant Intuit owed a duty to take reasonable steps to prevent fraudulent tax filings
25 including, at a minimum, not allowing new or additional accounts to be opened under the same
26 Social Security number, and to implement a process to detect fraudulent filings in a reasonable
27 amount of time.
28

57. Defendant Intuit was negligent and breached its duties to Plaintiff and the members of the Class by allowing fraudsters to file fraudulent tax returns in Plaintiff's name and in the names of the members of the Class.

58. Plaintiff and the members of the Class were injured as a result of Defendant's negligence and seek to recover damages as a result thereof in an amount to be determined at trial.

## COUNT II – NEGLIGENT PERFORMANCE OF UNDERTAKING

59. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

60. In its capacity as a tax preparer, who undertook, for consideration, to render services to another, Intuit owed a duty to take reasonable steps necessary for the protection of third parties, *i.e.*, Plaintiff and the Class.

61. Defendant Intuit failed to exercise reasonable care and therefore breached its duty to Plaintiff and the members of the Class by allowing fraudsters to file fraudulent tax returns in Plaintiff's name and in the names of the members of the Class.

62. Plaintiff and the members of the Class were injured as a result of Defendant's breach and seek to recover damages as a result thereof in an amount to be determined at trial.

## COUNT III – AIDING AND ABETTING FRAUD

63. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

64. Plaintiff brings this action for aiding and abetting a fraud.

65. On information and belief, Plaintiff alleges that Intuit had actual knowledge that fraudsters were filing false tax returns in the names of others such a Plaintiff and the Class. Plaintiff's information and belief is based on the allegations of Intuit former employees as set forth in ¶¶ 28 through 35 herein.

66. Defendant Intuit provided substantial assistance to advance the fraud's commission by taking the information fraudulently provided and filing false tax returns with the IRS and state tax agencies in the names of Plaintiff and the Class, and allowing tax refunds to be diverted to the fraudsters.

67. Plaintiff and the members of the Class were injured as a result of Defendant's conduct and seek to recover damages as a result thereof in an amount to be determined at trial.

## COUNT IV – AIDING AND ABETTING CONVERSION

68. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

69. Plaintiff brings this action for aiding and abetting conversion.

70. Plaintiff alleges that the actions of the fraudsters who filed false tax returns in the names of Plaintiff and the Class constituted a conversion.

71. On information and belief, Plaintiff alleges that Intuit had actual knowledge that fraudsters were filing false tax returns in the names of others such as Plaintiff and the Class. Plaintiff's information and belief is based on the allegations of Intuit former employees as set forth in ¶¶ 28 through 35 herein.

72. Defendant Intuit provided substantial assistance to advance the conversion by taking the information fraudulently provided and filing false tax returns with the IRS and state tax agencies in the names of Plaintiff and the Class, and allowing the tax refunds to be wrongfully diverted to the fraudsters.

73. Defendant's conduct constitutes aiding and abetting conversion.

74. Plaintiff and the members of the Class were injured as a result of Defendant's conduct and seek to recover damages as a result thereof in an amount to be determined at trial.

## COUNT V – VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAWS

75. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

76. Plaintiff brings this action for violation of California Business and Professional Code § 17200 *et seq.*, which prohibits unfair competition, which is defined as "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

77. As alleged herein, Defendants have engaged in unfair competition by engaging in unlawful and fraudulent acts. Defendants failed to provide adequate security measures to prevent the filing of fraudulent tax returns. Defendants lacked measures to identify potentially fraudulent returns for further review. Defendant's unlawful, unfair, and fraudulent acts generated profit for Defendant. Defendant received payment from the fraudsters for each fraudulent return filed.

78. Defendant failed to identify fraudulent filers when it could have and failed to inform plaintiff and other Class members when fraudulent returns were filed using their personal information.  Defendant had a duty to investigate returns and disclose to plaintiff and the Class its issues relating to fraudulent returns.  Defendant was in a superior position to detect the illegal and fraudulent usage of plaintiff and other class members' personal information, and failed to verify their identities.

79. Defendants thus failed to protect plaintiff and the class's personal information in violation of California Business and Professional Code § 1798.81.5 and failed to provide notice under § 1798.82.

80. Moreover, Defendant's competitors instituted common and obvious methods to prevent fraudulent acts, while Defendants, in an effort to gain an advantage refused to do so.  Defendant would allow the simultaneous e-filing of state and federal returns thereby increasing the ability of fraudsters and Defendant to profit.

81. The application of California law to non-California class members is appropriate because Defendant is a California company, and a substantial portion of the decisions and actions giving rise to this lawsuit occurred in California.

82. Plaintiff and the members of the class were injured as a result of the actions of Defendant.  Plaintiff and the members of the class seek an injunction against Defendant from continuing to engage in unlawful, unfair, and/or fraudulent acts and practices in violation of California Business and Professional Code § 17200 *et seq.*, as well as other relief allowed by law and damages as a result thereof in an amount to be determined at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request the following relief:

A. That the Court certify this case as a class action and appoint the named Plaintiff to be Class representatives and their counsel to be Class counsel;

B. That the Court award Plaintiff appropriate relief, to include actual and statutory damages, disgorgement, and restitution;

1    C.   That the Court award Plaintiff preliminary or other equitable or declaratory relief
2         as may be appropriate by way of applicable state or federal law;
3    D.   That the Court enter such additional orders or judgments as may be necessary to
4         prevent these practices and to restore to any person in interest any money or
5         property which may have been acquired by means of the violations;
6    E.   That the Court impose punitive damages under any provision of law under which
7         punitive damages may be imposed;
8    F.   That the Court award Plaintiff such other, favorable relief as may be available and
9         appropriate under law or at equity;
10   G.   That the Court award costs and reasonable attorneys' fees; and
11   H.   That the Court enter such other and further relief as the Court may deem just and
12        proper.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all issues so triable.

Dated: May 15, 2015                           **BERMAN DEVALERIO**


                                              By:   /s/ *Todd A. Seaver*
                                                     Todd A. Seaver

                                              One California Street, Suite 900
                                              San Francisco, CA 94111
                                              T: (415) 433-3200
                                              F: (415) 433-6382
                                              Email: tseaver@bermandevalerio.com

                                              Daniel E. Gustafson
                                              Daniel C. Hedlund
                                              Eric S. Taubel
                                              **GUSTAFSON GLUEK PLLC**
                                              Canadian Pacific Plaza
                                              120 South Sixth Street, Suite 2600
                                              Minneapolis, MN  55402
                                              T: (612) 333-8844
                                              F: (612) 339-6622
                                              Email: dgustafson@gustafsongluek.com
                                                     dhedlund@gustafsongluek.com
                                                     etaubel@gustafsongluek.com

Mark S. Goldman
Paul J. Scarlato
Brian D. Penny
**GOLDMAN SCARLATO & PENNY, P.C.**
101 E. Lancaster Avenue
Suite 204
Wayne, PA 19087
P: (484) 342 0700
F: († 484) 580 8747
Email: goldman@lawgsp.com
scarlato@lawgsp.com
penny@lawgsp.com

*Counsel for Plaintiffs and the Proposed Class*